UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| BRANDON E. WALLIS, | CIVIL ACTION |
| Plaintiff, | |
| v. | COMPLAINT 2:18-cv-00105 |
| AMERICOLLECT, INC., | JURY TRIAL DEMANDED |
| Defendant. | |

# COMPLAINT

**NOW COMES** Brandon E. Wallis ("Plaintiff"), by and through his attorneys, Sulaiman Law Group, Ltd. ("Sulaiman"), complaining of Americollect, Inc. ("Defendant") as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. §1692, violations of the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. §227, and violations of the Wisconsin Consumer Act ("WCA") under Wis. Stat. §427 *et seq.* for Defendant's unlawful conduct.

## JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the FDCPA, TCPA, and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. Supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. §1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business in the Eastern District of Wisconsin, and a substantial portion of the events or omissions giving rise to the claims occurred within the Eastern District of Wisconsin.

1

## PARTIES

5. Plaintiff is a natural person over 18-years-of-age who is a "consumer" as the term is defined by 15 U.S.C §1692a(3), and is a "person" as defined by 47 U.S.C. §153(39).

6. Defendant is a national leader in accounts receivable management and "is consistently collecting more than other agencies by doing the UN-thinkable—being RIDICULOUSLY NICE."[1] With its principal place of business located at 1851 South Alverno Road, Manitowoc, Wisconsin, Defendant regularly collects upon consumers in Wisconsin. The principal purpose of Defendant's business is the collection of consumer debts. Defendant collects or attempts to collect, directly or indirectly, defaulted debts owed or due or asserted to be owed or due to others using the mail and telephone, including consumers in the State of Wisconsin. Defendant has been a member of ACA International, an association of credit and collection professionals, since 1968.[2]

## FACTS SUPPORTING CAUSES OF ACTION

7. In June 2017, Plaintiff suffered a medical emergency that required surgery at Aurora Medical Center in Burlington, Wisconsin. Consequently, Plaintiff incurred medical expenses in the amount of $2,500 ("subject debt" or "subject loan").

8. In August 2017, Plaintiff began receiving unfamiliar collection calls to his cellular telephone number (262) XXX-3537 from Defendant.

9. At all times relevant to the instant action, Plaintiff was the sole subscriber, owner, possessor, and operator of the cellular telephone ending in 3537.

10. Immediately after the calls began, Plaintiff answered a phone call to his cellular telephone from a representative of Defendant. Defendant repeatedly requested that Plaintiff make a payment of $2,500 to satisfy purported unpaid medical expenses stemming from Plaintiff's surgery.

---

[1] http://www.americollect.com/about/
[2] http://www.acainternational.org/search#memberdirectory

11. Perplexed, Plaintiff immediately began investigating the reason Defendant was claiming he owed the subject debt.

12. At no time did Defendant send Plaintiff any correspondences notifying him of his rights pursuant to 15 U.S.C. §1692g.

13. In October 2017, Plaintiff answered a phone call to his cellular telephone from a representative of Defendant in which she demanded Plaintiff to make a payment on the subject debt. Plaintiff responded by requesting that Defendant cease placing calls to his cellular telephone as he believed that his insurance had satisfied the subject debt.

14. Plaintiff answered no less than 3 calls from Defendant, and in each answered call, demanded that Defendant cease its calls to Plaintiff's cellular telephone.

15. Plaintiff's spouse also received numerous calls from Defendant attempting to ascertain Plaintiff's location and to attempt to collect the subject debt from her personally.

16. Notwithstanding Plaintiff's numerous requests that Defendant's collection calls cease, Defendant placed or caused to be placed an average of 1 phone calls per day between October 2017 through the present day, in an attempt to collect on the subject debt.

17. Plaintiff's demands that Defendant's phone calls cease fell on deaf ears and Defendant continued its phone harassment campaign.

18. In total, Defendant placed or caused to be placed no less than 41 harassing phone calls to Plaintiff's cellular telephone from October 2017 through the present day, with calls taking place several times in one day, up to 3 times per day, and on back to back days.

19. In the calls that Plaintiff did answer, Plaintiff was greeted by a noticeable period of "dead air" while Defendant's automated telephone system attempted to connect Plaintiff to a live agent.

20. Specifically, there would be an approximate 2 second pause between the time Plaintiff said "hello," and the time that a live agent introduced them self as a representative of Defendant.

21. Moreover, Plaintiff also heard what sounds to be call center noise in the background of Defendant's phone calls.

22. Upon information and belief, Defendant placed its calls to Plaintiff's cellular telephone using a predictive dialing system, an automated telephone dialing system that is commonly used in the debt collection industry to collect defaulted debts.

## DAMAGES

23. Defendant's harassing phone calls have severely disrupted Plaintiff's daily life and general well-being.

24. Defendant's phone harassment campaign and illegal collection activities have caused Plaintiff actual harm, including but not limited to, invasion of privacy, nuisance, intrusion upon and occupation of Plaintiff's cellular telephone capacity, wasting Plaintiff's time, the increased risk of personal injury resulting from the distraction caused by the phone calls, aggravation that accompanies unsolicited telephone calls, emotional distress, mental anguish, anxiety, loss of concentration, diminished value and utility of telephone equipment and telephone subscription services, the loss of battery charge, and the per-kilowatt electricity costs required to recharge his cellular telephone as a result of increased usage of his telephone services.

25. In addition, each time Defendant placed a telephone call to Plaintiff, Defendant occupied Plaintiff's telephone number such that Plaintiff was unable to receive other phone calls.

26. Concerned about the violations of his rights and invasion of his privacy, Plaintiff was forced to seek the assistance of counsel to file this action to compel Defendant to cease its unlawful conduct.

4

## COUNT I – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

27. Plaintiff restates and realleges paragraphs 1 through 26 as though fully set forth herein.

28. Defendant placed or caused to be placed numerous non-emergency calls, including but not limited to the calls referenced above, to Plaintiff's cellular telephone using an automatic telephone dialing system ("ATDS") without his prior consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

29. The TCPA defines ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

30. Upon information and belief, based on the lack of prompt human response during the phone calls in which Plaintiff answered, Defendant used a predictive dialing system to place calls to Plaintiff's cellular telephone.

31. "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

32. The Federal Communications Commission ("FCC") has determined that predictive dialing systems are a form of an automatic telephone dialing system. *Id.*

33. Upon information and belief, the predictive dialing system employed by Defendant transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

34. Defendant violated the TCPA by placing no less than 41 harassing phone calls to Plaintiff's cellular telephone from October 2017 through the present day, using an ATDS without his prior consent.

35. Any prior consent, if any, was revoked by Plaintiff's numerous verbal revocations. Specifically, Plaintiff verbally revoked consent to be called on his cellular phone on at least 3 separate occasions.

36. As pled above, Plaintiff was severely harmed by Defendant's collection calls to his cellular phone.

37. Upon information and belief, Defendant has no system in place to document and archive whether it has prior consent to contact consumers on their cellular phones.

38. Upon information and belief, Defendant knew its collection practices were in violation of the TCPA, yet continued to employ them to increase profits at Plaintiff's expense.

39. Defendant, through its agents, representatives, subsidiaries, and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. §227(b)(1)(A)(iii).

40. Pursuant to 47 U.S.C. §227(b)(3)(B), Defendant is liable to Plaintiff for a minimum of $500 per call. Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), Defendant's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. §227(b)(3)(C).

**WHEREFORE**, Plaintiff, BRANDON E. WALLIS, respectfully requests that this Honorable Court enter judgment in his favor as follows:

   a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

   b. Awarding Plaintiff damages of at least $500.00 per phone call and treble damages pursuant to 47 U.S.C. §§ 227(b)(3)(B)&(C);

   c. Enjoining Defendant from contacting Plaintiff; and

d. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

41. Plaintiff restates and realleges paragraphs 1 through 26 as though fully set forth herein.

42. Plaintiff is a "consumer" as defined by FDCPA §1692a(3).

43. The alleged subject debt is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

44. Defendant is a "debt collector" as defined by §1692a(6) because its primary business is the collection of delinquent debts and it regularly collects debts and uses the mail and/or the telephones to collect delinquent accounts allegedly owed to a third party.

45. Moreover, Defendant is a "debt collector" because it acquired rights to the subject debt after it was in default. 15 U.S.C. §1692a(6).

46. Defendant used the telephone to attempt to collect the subject debt and, as such, engaged in "communications" as defined in FDCPA §1692a(2).

47. Defendant's communications to Plaintiff were made in connection with the collection of the subject debt.

48. Defendant violated 15 U.S.C. §§1692c(a)(1), d, d(5), and g through its unlawful debt collection practices.

**a. Violations of FDCPA § 1692c**

49. Defendant violated §1692c(a)(1) when it continuously called Plaintiff after being notified to stop on no less than 3 separate occasions. This repeated behavior of continuously and systematically calling Plaintiff's cellular phone over and over after he demanded that it cease contacting him was harassing and abusive. Even after being told to stop contacting him, Defendant

7

continued its onslaught of phone calls with the specific goal of oppressing and abusing Plaintiff into paying the subject debt.

50. Furthermore, Defendant has relentlessly called Plaintiff on no less than 41 occasions in the course of less than 4 months. This volume of calls shows that Defendant willfully ignored Plaintiff's pleas with the goal of annoying and harassing him into submission.

51. Defendant was notified by Plaintiff that its calls were not welcomed. As such, Defendant knew that its conduct was inconvenient, unwanted, and distressing to him.

    b. **Violations of FDCPA § 1692d**

52. Defendant violated §1692d by engaging in abusive, harassing, and oppressive conduct by relentlessly calling Plaintiff's cellular phone seeking immediate payment on the subject debt. Moreover, Defendant continued placing the relentless calls after Plaintiff demanded that the calls cease on no less than 3 separate occasions.

53. Defendant violated §1692d(5) by causing Plaintiff's cellular phone to ring repeatedly and continuously in an attempt to engage Plaintiff in conversations regarding the collection of the subject debt with the intent to annoy, abuse, or harass Plaintiff. Specifically, Defendant placed or caused to be placed no less than 41 harassing phone calls to Plaintiff's cellular telephone from October 2017 through the present day, using an ATDS without his prior consent, with calls taking place several times in one day and on back to back days.

    c. **Violations of FDCPA § 1692g**

54. Defendant violated §1692g through its initial communication by failing to properly inform Plaintiff as to Plaintiff's rights for debt verification in a manner which was not reasonably calculated to confuse or frustrate the least sophisticated consumer. Despite the foregoing, Defendant through its initial communication demanded payment of the subject debt from Plaintiff

8

through the use of an automated telephone dialing system and failed to adequately send Plaintiff his right to dispute the validity of the subject debt within five days of the initial communication.

55. As an experienced debt collector, Defendant knew or should have known the ramifications of collecting on a debt through incessant harassing phone calls to the cellular phones of consumers.

56. Upon information and belief, Defendant systematically places unsolicited and harassing debt collection calls to consumers in Illinois in order to aggressively collect debts allegedly in default to increase its profitability at the consumers' expense.

57. As stated above, Plaintiff was severely harmed by Defendant's conduct.

**WHEREFORE**, Plaintiff BRANDON E. WALLIS respectfully requests that this Honorable Court:
  a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
  b. Award Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;
  c. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and
  d. Award any other relief as the Honorable Court deems just and proper.

### COUNT III – VIOLATIONS OF THE WISCONSIN CONSUMER ACT

58. Plaintiff restates and realleges paragraphs 1 through 26 as though fully set forth herein.

59. The WCA states:

> "In attempting to collect an alleged debt arising from a consumer credit transaction or other consumer transaction…a debt collector may not…engage in other conduct which can reasonably be expected to threaten or harass the customer or a person related to the customer." Wis. Stat. §427.104(1)(h).

60. Defendant violated §427.104(1)(h) by engaging in harassing conduct in contacting Plaintiff. It was unfair for Defendant to relentlessly contact Plaintiff through means of an ATDS when he notified Defendant that the debt was not outstanding and to cease calling him. Defendant

9

ignored Plaintiff's demands and continued to systematically place calls to his cellular phone without his consent. Following its characteristic behavior in placing voluminous calls to consumers, Defendant engaged in harassing behavior, willfully done with the hope that Plaintiff would be compelled to make payment.

61. Defendant has also placed multiple calls to Plaintiff's cellular phone in the same day, even after being told to cease calling. Placing several calls in a short amount of time is extremely harassing behavior, especially after being told by Plaintiff that he does not wish to be contacted and that the debt was erroneous.

62. The WCA was designed to protect consumers, such as Plaintiff, from the exact behavior committed by Defendant.

63. The WCA further states:

> "In attempting to collect an alleged debt arising from a consumer credit transaction or other consumer transaction…a debt collector may not…disclose or threaten to disclose information adversely affecting the customer's reputation for credit worthiness with knowledge or reason to know that the information is false."  Wis. Stat. §427.104(1)(c)

> "In attempting to collect an alleged debt arising from a consumer credit transaction or other consumer transaction…a debt collector may not…claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."  Wis. Stat. §427.104(1)(j)

64. Defendant violated §427.104(1)(c) by communicating with Plaintiff's spouse that Plaintiff owes and needs to pay the subject debt without Plaintiff's consent. As a debt collector that has been a member of the ACA for nearly 50 years and prides itself on being "ridiculously nice," as soon as Plaintiff notified it that the debt was erroneous, Defendant should have conducted a reasonable investigation which would have shown that Plaintiff's insurance covered his medical expenses.

10

65. Defendant violated §427.104(1)(j) by continuing to place calls to Plaintiff's cellular phone after he told it that the debt was paid and to stop calling. Through its conduct, Defendant misleadingly represented to Plaintiff that it had the legal ability to contact him via an automated system when it no longer had consent to do so. As an experienced debt collector, Defendant should have known that it did not have the right to continue harassing Plaintiff with collection phone calls.

66. As pled above, Plaintiff has suffered actual damages as a result of Defendant's unlawful practices.

67. Defendant's conduct was outrageous, willful and wanton, and showed a reckless disregard for the rights of Plaintiff. Defendant acted in defiance of Plaintiff's prompts. Plaintiff demanded Defendant to stop contacting him, but yet, he was still bombarded with collection phone calls from Defendant. In an unfair and deceptive manner, Defendant called Plaintiff at least 41 times using different phone numbers, and even called multiple times during the same day. This onslaught of phone calls was an attempt by Defendant to harass Plaintiff into submission. After the initial conversation in which Plaintiff notified it that the debt was erroneous and to stop calling him, Defendant had more than enough information to know that it should not continue calling his phone number. Defendant falsely and deceptively represented that it had the legal ability to contact Plaintiff and Plaintiff's spouse seeking collection of debt when it did not. Upon information and belief, Defendant regularly engages in the above described behavior against consumers in Wisconsin and for public policy reasons should be penalized.

**WHEREFORE**, Plaintiff, BRANDON E. WALLIS, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to §427.105, in an amount to be determined at trial, for the underlying violations;

c. Awarding Plaintiff costs and reasonable attorney fees pursuant to §425.308(1)-(2);

d. Enjoining Defendant from further contacting Plaintiff; and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

**Plaintiff demands trial by jury.**

Dated: January 22, 2018                                              Respectfully Submitted,


/s/ Marwan R. Daher                                                  /s/ Omar T. Sulaiman
Marwan R. Daher, Esq.                                                Omar T. Sulaiman, Esq.
*Counsel for Plaintiff*                                              *Counsel for Plaintiff*
Sulaiman Law Group, Ltd.                                             Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200                                2500 South Highland Avenue, Suite 200
Lombard, IL 60148                                                    Lombard, IL 60148
Telephone: (630) 537-1770                                            Telephone: (630) 575-8141
mdaher@sulaimanlaw.com                                               osulaiman@sulaimanlaw.com